# Richmond

James Latham, Jr. v. Commonwealth of Virginia.

March 4, 1946.

Record No. 3073.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Spratley, JJ.

The opinion states the case.

*Herman A. Sacks* and *Q. C. Davis, Jr.*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *V. P. Randolph, Jr., Assistant Attorney General*, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

Plaintiff in error, James Latham, Jr., was arraigned upon an indictment which contained two counts, to-wit: (1st) Larceny of three cases of cigars of the value of $750, the property of the Pennsylvania Railroad Company, a corporation; and (2nd) receiving three cases of cigars of the value of $750, the property of the Pennsylvania Railroad Company, a corporation, well knowing the said goods and chattels to have been unlawfully and feloniously stolen.

Upon his plea of not guilty, plaintiff was tried by a jury which returned a general verdict of guilty and fixed his punishment at ten years confinement in the penitentiary.

The case is before us upon a writ of error to the judgment of the court, carrying into effect the verdict of the jury.

The petition for the writ assigns two errors:

"1. The Court erred in refusing to sustain the motion of the accused to strike the Commonwealth's testimony on the ground that the Commonwealth had failed to prove the *corpus delicti*.

"2. The Court erred in refusing to set aside the verdict of the jury on the ground that it was contrary to the law and the evidence, and was without sufficient evidence to support it."

The record shows that at the conclusion of the evidence adduced by the Commonwealth, the defendant moved the court to strike the evidence, on the ground that the *corpus delicti* had not been proven. It is further shown by the record that during his argument on this motion, the then counsel for the defendant abandoned this contention and

no action thereon was taken by the trial court. It therefore follows that since the defendant failed to comply with the provisions of Rule 22 of this court, the first assignment of error is without merit.

Rule 22 of the Rules of Court provides in part:

"In civil and criminal cases, all objections to writs of every kind, pleadings, instructions, notices, the admissibility of evidence, or other matters requiring a ruling or judgment of the trial court, shall state with reasonable certainty the ground of objection, and, unless it appears from the record to have been so stated, such objections will not be considered by this court except for good cause shown, or to enable this court to attain the ends of justice."

In our consideration of the second assignment of error, it is essential to state the case presented by the Commonwealth.

On December 29, 1944, the El Producto Cigar Company, of Philadelphia, Pennsylvania, delivered to the Pennsylvania Railroad Company, at Philadelphia, three shipments of cigars, consigned respectively to W. T. Beamer, Roanoke, Virginia; W. A. Mallory, Suffolk, Virginia; and Kemper Salyer, Bristol, Tennessee. On the 5th day of January, 1945, the shipments of cigars, having arrived in Norfolk, were checked by an employee of the Pennsylvania Railroad Company while they were in possession of the Pennsylvania Railroad Company and none was short. The cigars were then delivered to the Norfolk and Western Railway Company and placed in one of its box cars. On the 8th day of January, 1945, the box car belonging to the Norfolk and Western Railway Company, into which the cigars had been transferred by the Pennsylvania Railroad Company, was unsealed at the freight station of the Norfolk and Western who found that it had been sealed with two seals, one of the Pennsylvania Railroad Company and the other of the Norfolk and Western Railroad Company. Upon opening the car to check the freight there, he found the cigars in question were missing. Early Saturday morning, January 20, 1945, members of the Norfolk police department came to the store of accused, at number

626 Nicholson Street, Norfolk, which was in charge of his wife, and found in a room adjoining the store three cartons of cigars which at the trial of the case were identified as the cigars which the El Producto Company had delivered to the respective consignees above mentioned. One carton of these cigars was found under the bed and two others were at the head of the bed. All three cases had been broken open and cigars taken therefrom. The accused was not present when the police officers arrived at the store but, as stated, his wife was present and she was placed under arrest.

That the wife operated the store under the direction of the defendant is clearly shown. When testifying, she stated that on January 18, 1945, two men brought three cartons of cigars to the store and inquired for the defendant; that she informed them defendant had gone to work; that the men left the cigars in the room adjoining the store because there was not sufficient room in the main store; that she informed her husband the next morning that two men had left the cigars; that he instructed her to return the cigars to the two men; that she did not know the men but they came back to the store after she was released from jail; that when the cartons were delivered they were broken open; and that she saw the license number of the car driven by the two men but did not notify the police.

C. T. Hale, a special officer, testified that defendant came to the police station and inquired why his wife was being held. Upon being informed of the reason for her arrest "he made the statement that he bought these cigars last May or June of last year in Philadelphia from some Jew, not knowing the Jew's name or address, and had them shipped by Railway Express to Brooke Avenue, and he came down on the same train and over the same ferry, and went home and got his horse and wagon, and came down to Brooke Avenue and got them."

When testifying as a witness, the defendant admitted that he had been previously convicted of both grand larceny and petty larceny. It was further shown that when the offi-

cers searched the store of the defendant they found a quantity of cigarettes in a container which had been consigned to a grocery store in Welch, West Virginia.

The second assignment of error, based upon the contention that the cigars were not the property of the Pennsylvania Railroad Company and were not in its possession at the time of the alleged taking, is likewise without merit.

Upon the motion of the defendant, the court gave to the jury the following instruction:

"The Court instructs the jury that if you believe that the shortage or theft of the three shipments occurred while in the possession of Norfolk & Western Railway then you will find the defendant, James Latham, Jr., not guilty."

This instruction did not state the correct doctrine applicable to the case at bar and should not have been given, for the reasons stated in *Booth* v. *Commonwealth*, 165 Va. 794, 183 S. E. 257. There, speaking for the court, Mr. Justice Eggleston said:

"The great majority of the reported cases uphold the rule that an indictment for larceny, robbery, or some other crime based on a larceny, which alleges ownership in a certain person, will be sustained by proof that such person is the agent or bailee of the true owner, or has, in behalf of the owner, the control, care, and management of the property stolen."

The rule stated in the *Booth Case, supra,* is in conformity with the statute regarding the possession of stolen goods.

Section 4872, Code of 1942 (Michie), reads, *inter alia*:

"In a prosecution for * * * stealing * * * or fraudulently receiving * * * any personal estate, it shall be sufficient to prove that, when the offense was committed, the actual or constructive possession, or a general or special property * * * was in the person or community alleged in the indictment * * * to be the owner thereof."

Section 4448 of the Code provides that a person who receives stolen goods, knowing them to have been stolen, is guilty of larceny.

To sustain an indictment for larceny it is only neces-

sary to prove that the goods alleged to have been stolen are either the "absolute or the special property of the alleged owner."

That this is the general rule, regardless of statute, is clearly set forth in Wharton's Criminal Evidence (11th Ed.), vol. 2, pp. 1879-1880. There we read:

"To sustain an indictment for larceny or for similar offenses in which the gist and essence of the crime charged is the taking and carrying away of the personal goods of another without the consent of the owner, it is sufficient that the goods alleged to have been stolen are proved to be either the absolute or the special property of the alleged owner. Hence, the allegation of ownership of stolen property is sustained by the proof of any legal interest or special ownership which may be less than absolute title to the property."

In *Myers* v. *Commonwealth*, 132 Va. 746, 767, 111 S. E. 463, we read:

"As said in 2 Bish. New Cr. Proc. (4th Ed.), secs. 720, 721:

" '2. Where there is both a general and special owner, the rule is nearly universal that the pleader may charge the goods as belonging to either, though often the convenience of making proof will suggest practical grounds for choice. For example—

" '3. Goods stolen from a common carrier—may be laid as his or as the general owner's. More fully—

" 'Sec. 721. 1. Special ownership,—The rule is general * * * that where chattels are taken feloniously from any bailee or other special owner * * * the ownership may be laid either in such possessor or the real owner, at the election of the pleader.' "

It is conclusively proven that the cigars in question were delivered by the consignor to the Pennsylvania Railroad Company for carriage in interstate commerce.

It must be conceded that whenever the fact is established that goods are stolen in interstate transit, then the Federal rule stated in the Carmack Amendment, is applicable. In

Title 49, section 20, paragraph 11, U. S. C. A. of the act, this is said:·

"Any common carrier, railroad or transportation company * * * receiving property for transportation·from a·point in one State * * * to a point in another State * * * shall be liable to the lawful owner thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered * * * ."

■ It therefore follows as a corollary, that since the initial carrier is liable for loss, damage or injury to such property, then it has a legal or special ownership in the property so transported.

We are supported by the case of *Atlantic Coast Line R. Co.* v. *Riverside Mills*, 219 U. S. 186, 31 S. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, to show this conclusion is correct. In construing the Carmack Amendment, this language is employed:

"Reduced to the final results, the Congress has said that a receiving carrier, in spite of any stipulation to the contrary, shall be deemed, when it receives property in one State to be transported to a point in another involving the use of a connecting carrier for some part of the way, to have adopted such other carrier as its agent, and to incur liability throughout the entire route, with the right to reimbursement· for a loss not due to his own negligence."

■ When we analyze the·evidence, which shows that the identical cigars which were delivered to the Pennsylvania Railroad Company were found in the store of defendant, along with other apparently stolen goods, the burden was upon the defendant to give a satisfactory account of their legal acquisition. See *Myers' Case, supra.* This he did not do but he introduced his wife as a witness in his behalf and her fantastic tale of two men bringing the cigars to the store was in direct conflict with the statement of defendant that he purchased the identical cigars in Philadelphia.

The jury were the sole judges of the credibility of the

witnesses. All conflicts in the evidence have been resolved in favor of the Commonwealth.

In our opinion there is no error in the judgment complained of. It is, therefore, affirmed.

*Affirmed.*