COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bumgardner and Frank
Argued at Richmond, Virginia


LATASHA GARDNER, S/K/A
 LATASHA ALON GARDNER
                                           OPINION BY
v.    Record No. 1924-99-2        JUDGE JAMES W. BENTON, JR.
                                          JUNE 20, 2000
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                F. Ward Harkrader, Jr., Judge

        Norman H. Lamson for appellant.

        Amy L. Marshall, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


     The trial judge convicted Latasha Alon Gardner of

fraudulently obtaining money by false pretenses.  See Code

§ 18.2-178.  Gardner contends the record establishes a fatal

variance between the indictment, which charged she obtained her

grandfather's money, and the evidence, which she alleges proved

she obtained a bank's money.  For the reasons that follow, we

affirm the conviction.

                                I.

     The grand jury's indictment charged that "Gardner did

feloniously and fraudulently obtain, by false pretense . . . ,

United States currency of a value greater than $200.00, the

property of George Gardner[, her grandfather], with the intent to

defraud him . . . [in violation of Code §] 18.2-178."  At trial,

the evidence proved that Gardner's grandfather maintained a

savings account at Wachovia Bank.  On May 1, 1998, Gardner appeared at the bank and presented to a teller a withdrawal slip for $725 from her grandfather's account.  The teller informed her that "there was a block put on this account."  One-half hour later, Gardner returned to the bank with the same withdrawal slip, which contained additional writings, including the notation that "Latasha is allowed to receive and sign this [withdrawal slip]."  The withdrawal slip contained the writing "George Gardner, Sr." and the account number.  The teller accepted the withdrawal slip, processed the transaction, and gave Gardner $725.

A detective testified that several weeks after the withdrawal, Gardner admitted she signed her grandfather's name on the deposit slip.  She explained that her grandfather had authorized her to do so.  Gardner's grandfather testified, however, that he did not authorize Gardner to withdraw money from his bank account.  He also testified that the handwriting of his name on the withdrawal slip was not his signature.

A manager employed by the bank testified that the withdrawal slip was "drawn on the account of [Gardner's grandfather]."  He further testified that "before [the funds were] actually taken off of [Gardner's grandfather's] account," the bank learned Gardner was not authorized to obtain the funds.  The bank referred the investigation of the unauthorized withdrawal to the branch office where the transaction occurred and did not debit Gardner's grandfather's account.

At the conclusion of the evidence, Gardner's attorney made a motion to strike the evidence, alleging that the evidence proved

the money belonged to the bank, not to Gardner's grandfather. The trial judge denied the motion and convicted Gardner of the offense charged in the indictment. This appeal followed.

## II.

In pertinent part, Code § 18.2-178 provides as follows:

> If any person obtain, by any false pretense
> . . . , from any person, with intent to
> defraud, money or other property which may
> be the subject of larceny, he shall be
> deemed guilty of larceny thereof . . . .

This statute requires the Commonwealth to prove the following elements: "an intent to defraud, an actual fraud, use of false pretenses for the purpose of perpetrating the fraud, and accomplishment of the fraud by means of the false pretenses used for that purpose." Quidley v. Commonwealth, 221 Va. 963, 965, 275 S.E.2d 622, 624 (1981). The evidence in this record clearly proved each of those elements beyond a reasonable doubt.

Gardner contends, however, that a fatal variance exists between the indictment and the evidence because the victim of her conduct was the bank and not her grandfather. She relies upon principles stated in Bennet v. First & Merchants Nat'l Bank, 233 Va. 355, 360, 355 S.E.2d 888, 891 (1987) (noting that a depositor's "funds become the property of the bank immediately on deposit, and the bank becomes the debtor of the depositor"), and Central Nat'l Bank v. First and Merchants Nat'l Bank of Richmond, 171 Va. 289, 303, 198 S.E. 883, 888 (1938) (stating "[t]he general rule . . . that a depositor's funds in a bank are unaffected by any unauthorized payment"). We hold that the proof established the elements of the offense as they pertain to her grandfather's account.

Rejecting an appellant's contention in <u>Quidley</u> that "a fatal variance" existed, the Supreme Court reasoned as follows:

> [T]here is no [statutory] requirement that the intended victim suffer actual pecuniary loss.  Ultimate financial gain or loss to the victim is immaterial.
>
> The crime is complete when the fraud intended is consummated by obtaining the property sought by means of the false representations, and the offense is not purged by ultimate restoration or payment to the victim.  It is sufficient if the fraud of the accused has put the victim in such a position that he may eventually suffer loss.

221 Va. at 966, 275 S.E.2d at 625 (citations omitted).

The evidence proved that Gardner gave a teller a withdrawal slip, containing false and forged information, to obtain money from her grandfather's account on deposit at the bank.  When the bank paid money to Gardner pursuant to the tenor of the withdrawal slip, the bank provisionally accepted the withdrawal slip as a debit transaction for Gardner's grandfather's account.  Although the bank did not complete the process of posting the debit transaction to the account after the bank learned of the fraud, <u>see</u> Code § 8.4-213(1)(C), the evidence clearly established that Gardner used her grandfather's name and account number as the means to obtain the cash withdrawal.

The general principles stated in <u>Bennet</u> and <u>Central National Bank</u> do not control the resolution of this issue.  We recognize that the Uniform Commercial Code significantly defines the relationship between a drawee bank and its account customers and provides remedies as between a drawee bank and its account customers for the payment of forged instruments.  <u>See</u> Code

§§ 8.4-401 through 8.4-407.  The issue presented here, however, is not the abstract nature of the bank's underlying civil liability to Gardner's grandfather.  Rather, the issue is the nature of the transaction Gardner engaged in when she made the withdrawal.  In that transaction, Gardner intended to withdraw funds her grandfather placed on deposit with the bank.  In honoring the withdrawal slip, the bank paid cash to Gardner upon its provisional determination that the transaction was authorized.  Resolving an analogous issue, the Court in United States v. Pavloski, 574 F.2d 933 (7th Cir. 1978), ruled as follows:

> In arguing that the check forging activities did not constitute embezzling or converting moneys and funds of the union, [the appellant] relies on the commercial law doctrine that a drawee bank pays its own funds, not those of its depositor, when it honors a forged check.  Because of this doctrine, he argues, in legal effect he did not embezzle the union's funds, but rather converted funds of the bank.

> *        *        *        *        *        *        *

> [However], "funds" of the union were converted to the use of [appellant] when the bank debited the account of the union, as it did when each forged check was honored.  That these reductions in funds were temporary would not exonerate [appellant] from liability . . . .

Id. at 935-36.

When Gardner "obtained [the money] . . . through use of the fraudulent [withdrawal slip], the crime charged was complete at that instant."  Quidley, 221 Va. at 966, 275 S.E.2d at 625.  At the moment the transaction occurred, the bank honored a demand to

pay funds held for the account of Gardner's grandfather.  The bank's later discovery of the forgery and its decision not to debit Gardner's grandfather's account do not provide a basis to conclude that the transaction, when it occurred, was unrelated to Gardner's grandfather's account.

For these reasons, we hold that no variance existed between the indictment and the proof.  Accordingly, we affirm the judgment of conviction.

<u>Affirmed</u>.