Present:  All the Justices

LATASHA GARDNER,
s/k/a LATASHA ALON GARDNER
                                        OPINION BY
v.  Record No. 002143           CHIEF JUSTICE HARRY L. CARRICO
                                        June 8, 2001
COMMONWEALTH OF VIRGINIA

                FROM THE COURT OF APPEALS OF VIRGINIA

     On December 21, 1998, a grand jury in the Circuit Court of the

City of Charlottesville indicted the defendant, Latasha Alon

Gardner, for obtaining by false pretenses United States currency of

a value greater than $200.00, "the property of George Gardner,"

with the intent to defraud him.  Code § 18.2-178.[1]  The trial court,

sitting without a jury, convicted the defendant of the charge and

sentenced her to serve three years in the penitentiary.  The Court

of Appeals affirmed the conviction.  Gardner v. Commonwealth, 32

Va. App. 595, 529 S.E.2d 820 (2000).  We awarded the defendant this

appeal to consider the question whether a fatal variance exists

between the indictment's allegation that the money was the property

of George Gardner and evidence which, according to the defendant,

shows that the money was the property of the bank from which it was

obtained.

---

[1] Code § 18.2-178 provides as follows:

>     If any person obtain, by any false pretense or token, from any
>     person, with intent to defraud, money or other property which
>     may be the subject of larceny, he shall be deemed guilty of
>     larceny thereof; or if he obtain, by any false pretense or
>     token, with such intent, the signature of any person to a
>     writing, the false making whereof would be forgery, he shall
>     be guilty of a Class 4 felony.

The defendant is the granddaughter of George Gardner. He maintained a savings account at a Charlottesville branch of Wachovia Bank. On May 1, 1998, the defendant went to the branch and presented to a teller a withdrawal slip for $725.00 ostensibly signed by George Gardner and stating that "Latasha is allowed to receive and sign this [withdrawal slip]." The teller paid the defendant $725.00 in cash.

In fact, George Gardner had not signed the withdrawal slip, and he had not given the defendant permission to sign his name. When arrested on a warrant charging her with obtaining the money by false pretenses, the defendant admitted she had signed her grandfather's name to the withdrawal slip, but insisted she had signed it with his permission.

Before the bank charged the grandfather's account with the amount of the withdrawal, it learned that the defendant was not authorized to make the withdrawal. The grandfather's account "was not debited with this seven hundred and twenty-five dollars," and the bank was "out the money."

The defendant argues on appeal that because the Commonwealth pled an offense of larceny by false pretenses from the defendant's grandfather but proved a different offense of larceny by false pretenses from a bank, there was a fatal variance. Quoting <u>Bennet v. First & Merchants Nat'l Bank</u>, 233 Va. 355, 355 S.E.2d 888 (1987), the defendant states as follows:

> The relationship between a financial institution and its depositor is that of debtor and creditor. The funds become the property of the bank immediately on deposit, and the bank becomes the debtor of the depositor.

Id. at 360, 355 S.E.2d at 890-91. See also Bernardini v. Central Nat'l Bank, 223 Va. 519, 521, 290 S.E.2d 863, 864 (1982); Federal Reserve Bank v. State & City Bank & Trust Co., 150 Va. 423, 430-31, 143 S.E. 697, 699 (1928). In this relationship, the defendant says, the bank never promises to return any specific pieces of paper constituting United States currency but only promises to return an equivalent amount to the depositor. And, the defendant continues, citing Central Nat'l Bank v. First & Merchants Nat'l Bank, 171 Va. 289, 303, 198 S.E. 883, 888 (1938), the bank has no right to debit the depositor's account based upon an unauthorized withdrawal. It is plain, therefore, the defendant maintains, that there was a variance between the pleading and the proof in this case and that the variance was fatal.

The Commonwealth acknowledges the rule stated in Bennet that "a depositor's 'funds become the property of the bank immediately on deposit, and the bank become[s] the debtor of the depositor.' " The Commonwealth also acknowledges the rule stated in Central Nat'l Bank that " 'a depositor's funds in a bank are unaffected by any unauthorized payment.' " The Commonwealth argues, however, that these cases only "delineate the contractual relationship between a bank and its depositor" and "do not require a finding in this case that the bank can be the only victim."

3

The Commonwealth says that it "need only prove the victim alleged in the indictment has a legal interest in the property stolen." The Commonwealth cites Latham v. Commonwealth, 184 Va. 934, 940, 37 S.E.2d 36, 38-39 (1946), and Catterton v. Commonwealth, 23 Va. App. 407, 410-11, 477 S.E.2d 748, 750 (1996), in support. Both cases are inapposite. They stand for the proposition that for purposes of proving larceny, ownership may be laid either in the true owner or in a bailee. However, a general deposit in a bank is "not a bailment." Pendleton v. Commonwealth, 110 Va. 229, 234, 65 S.E. 536, 538 (1909).

The Commonwealth cites several other cases: United States v. Mitchell, 625 F.2d 158 (7th Cir. 1980); United States v. Pavloski, 574 F.2d 933 (7th Cir. 1978); Quidley v. Commonwealth, 221 Va. 963, 275 S.E.2d 622 (1981); and Bateman v. Commonwealth, 205 Va. 595, 139 S.E.2d 102 (1964). All are inapposite.

Mitchell involved a prosecution under 18 U.S.C. § 641, which proscribes the conversion of money or a thing of value of the United States. The defendant was charged with attempting to convert a stolen Illinois Public Aid warrant. He claimed that the warrant was not money or a thing of value of the United States within the meaning of § 641. However, approximately 50% of the money in the account on which the warrant was drawn was granted to the state by the federal government, the relevant statute and regulations contemplate that ultimate repayment would be made to the federal government, and while the money was in state hands it

4

was subject to substantial federal supervision and control. Hence, "the warrant retained by the [defendant] with the intent to convert it to his own use was a 'thing of value of the United States.' " 625 F.2d at 161. We fail to see how the decision in Mitchell would support a finding here that the grandfather, and not the bank, was the owner of the money the defendant fraudulently withdrew.

Pavloski involved a union treasurer who forged the name of the union president on checks Pavloski presented to the bank for payment. The bank honored the checks, paid Pavloski, and debited the union's account. Pavloski said the forgeries did not constitute embezzling union funds but rather conversion of funds of the bank. He relied on the commercial law doctrine that a drawee bank pays its own funds, not those of the depositor, when it honors a forged check. The court disagreed, stating that union funds were converted to Pavloski's use when the bank debited the account of the union and that the fact "these reductions in funds were temporary would not exonerate Pavloski from liability." 574 F.2d at 936. Here, however, as has been noted, the bank did not debit the grandfather's account with the amount the defendant obtained with the forged withdrawal slip.

In Quidley, the accused, an employee of the Norfolk Social Service Bureau, using a forged purchase order, obtained various items of clothing from J. C. Penney Company, ostensibly for a welfare recipient, and converted the goods to her own use. The Penney Company ultimately received full payment for the clothing

5

from the City of Norfolk Public Assistance Fund.  Indicted for obtaining clothing belonging to J. C. Penney Company by false pretenses and convicted of the offense, the accused claimed that a fatal variance existed between the indictment and the proof because the evidence showed the Penney Company received payment for the goods and the property, therefore, was defrauded from the social service bureau or the welfare recipient.  We disagreed.  We said that the offense was complete at the instant the accused obtained ownership of the goods through use of the fraudulent documents and that it was irrelevant that the Penney Company suffered no loss. 221 Va. at 966, 275 S.E.2d at 625.  Of course, until the instant the accused obtained the goods, they remained in the ownership of the Penney Company, just as the money involved in this case remained in the ownership of the bank until the instant the defendant obtained ownership through her use of the forged withdrawal slip.   And, just as the Penney Company was the obvious victim of the fraud in Quidley, the bank is the obvious victim of the fraud here.

In Bateman, the accused raised the amounts of several checks after they were drawn by his friend, Jerry H. Adams, and cashed the checks in the raised amounts at the drawee bank.  The accused was tried on separate counts alleging he obtained money by false pretenses from the drawer of the checks and from the bank that cashed the checks.  He was found guilty on the counts involving the drawer of the checks and not guilty on the counts involving the

6

bank. However, no argument was made in the case that the accused could not be convicted of obtaining the money of Adams by false pretenses because the money was the property of the bank. Furthermore, we said that "[t]he fraud was practiced on Adams" because the bank, when it cashed the checks, "paid out the money from the account of Adams deposited in the bank." 205 Va. at 600, 139 S.E.2d at 106. In other words, unlike the situation here, the bank debited Adams' account with the amounts of the forged checks.

Finally, the Commonwealth cites Code § 19.2-284[2] as standing for the proposition that "when the charge is a larceny offense, as long as the alleged victim of the offense as stated in the indictment has an interest in the property, a conviction is sustainable." The Commonwealth then states: "Here, even though for contract purposes the defendant's grandfather's funds became property of the bank, he still retained a legal interest in those funds as creditor; the money had to be paid to him on demand. Fed'l Reserve Bank v. State & City Bank & Trust Co., 150 Va. 423, 430, 143 S.E. 697, 699 (1928)."

---

[2] Code § 19.2-284 provides as follows:

> In a prosecution for an offense committed upon, relating to or affecting real estate, or for stealing, embezzling, destroying, injuring or fraudulently receiving or concealing any personal estate it shall be sufficient to prove that when the offense was committed the actual or constructive possession, or a general or special property, in the whole or any part of such estate was in the person or entity alleged in the indictment or other accusation to be the owner thereof.

7

This whole argument fails, however, upon an examination of the actual language this Court employed in the Federal Reserve case. The Court did not use language supporting the proposition that "the money had to be paid to [the grandfather] on demand." What the Court said was this: "In [the relation of debtor and creditor between a bank and a customer] the customer or depositor has the right to demand of the bank an equivalent amount of money, but not the specific coins or other currency deposited." Id. (Emphasis added.) And, under the circumstances of this case, that right does not amount to an interest sufficient to sustain a conviction on a charge of larceny from the grandfather by false pretenses. We conclude, therefore, that a variance exists in this case between the allegations of the indictment and the proof produced at trial.

The Commonwealth argues, however, that the variance is not fatal. Citing Mitchell v. Commonwealth, 141 Va. 541, 127 S.E. 368 (1925), and Hairston v. Commonwealth, 2 Va. App. 211, 343 S.E.2d 355 (1986), the Commonwealth says "[t]he general rule in Virginia is that, if an allegation in an indictment may be wholly stricken out and still leave the indictment sufficiently intact, it may be rejected as surplusage." Here, the Commonwealth asserts, "the phrase 'the property of George Gardner' certainly could be stricken and the allegations of the remainder of the indictment would be sufficient, because it would be following the wording of the statute."

However, as this Court stated in Barker v. Commonwealth, 4 Va. (2 Va. Cas.) 122 (1817): "[T]he laying in an Indictment for larceny, to whom the thing stolen did belong . . . is [a] matter of substance, and may be very important to the accused, both in making his defence, and upon a plea of auterfoits acquit, or convict." Id. at 126. And, as we said in Mabry v. Commonwealth, 4 Va. (2 Va. Cas.) 396, 398 (1824): "It is true, that the goods stolen must be alleged, in the Indictment, to be in some one, known or unknown; and, that the proof must correspond with the allegation."

Furthermore, even if it be assumed that the phrase "the property of George Gardner" was unnecessary, the result is the same. We stated in Mitchell:

> If the unnecessary word or words inserted in the indictment describe, limit or qualify the words which it was necessary to insert therein, then they are descriptive of the offense charged in the indictment and cannot be rejected as surplusage. The offense as charged must be proved.

141 Va. at 560, 127 S.E. at 374. When the Commonwealth added the phrase "the property of George Gardner" to the indictment, it described, limited, and qualified what was necessary to be alleged, and the added language cannot, therefore, be treated as surplusage.

Etheridge v. Commonwealth, 210 Va. 328, 171 S.E.2d 190 (1969), is closely analogous to the present situation. There, the indictment charged the accused with shooting into the residence of Edna Harper but the evidence showed the accused shot into the dwelling of Alberta Riddick. We reversed the conviction, stating as follows:

9

We agree with the defendant that a fatal variance existed between the allegations of the indictment and the proof of the crime. While it may not have been necessary under the statute to allege whose residence was fired into, when the Commonwealth chose to specify the residence involved as that of Edna Harper, it had the burden of establishing that fact. And when the Commonwealth showed that it was the residence of Alberta Riddick where the shooting occurred, it proved a different offense.

Id. at 330, 171 S.E.2d at 191-92. Here, when the Commonwealth alleged in the indictment that the money obtained by the defendant was the property of George Gardner but the evidence showed the money was the property of the bank, it proved a different offense, resulting in a fatal variance.

Accordingly, we will reverse the judgment of the Court of Appeals, vacate the judgment of the trial court, and dismiss the indictment.

Reversed and dismissed.

JUSTICE KINSER, dissenting.

Because I agree with the conclusion of the Court of Appeals that no variance existed between the indictment charging Latasha Gardner with obtaining money by false pretenses in violation of Code § 18.2-178 and the proof offered at trial, Gardner v. Commonwealth, 32 Va. App. 595, 600, 529 S.E.2d 820, 822 (2000), I respectfully dissent.

This Court has stated on more than one occasion that the elements of the crime of larceny by false pretense are "an intent to defraud, an actual fraud, use of false pretenses for the purpose of perpetrating the fraud, and accomplishment of the fraud by means

10

of the false pretenses used for that purpose." Quidley v.
Commonwealth, 221 Va. 963, 965, 275 S.E.2d 622, 624 (1981) (citing
Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 807
(1977)).  In the present case, the Commonwealth proved each of
these elements beyond a reasonable doubt.

The defendant went to a branch office of Wachovia Bank and
presented a withdrawal slip ostensibly signed by the defendant's
grandfather.  Based on that withdrawal slip, the defendant received
$725 in cash.  However, the defendant's grandfather had not signed
the withdrawal slip authorizing the defendant to receive the funds
nor had he given the defendant permission to sign his name to the
withdrawal slip.

Nevertheless, the majority concludes that, because the money
received by the defendant was the property of the bank, see Bennet
v. First & Merchants Nat'l Bank, 233 Va. 355, 360, 355 S.E.2d 888,
890-91 (1987), a fatal variance existed between the indictment and
the proof offered at trial.  In reaching this conclusion, the
majority focuses solely on the debtor-creditor relationship between
a financial institution and its depositor.  Although I do not
dispute that, when funds are deposited in a bank, the funds become
the property of the bank, see id., I do not believe that the
Commonwealth proved a different offense from the one alleged in the
indictment.

When the bank paid cash to the defendant in accordance with
the withdrawal slip, the bank believed that it was paying funds

from the grandfather's account and accepted the withdrawal slip as a debit to that account. Although the bank ultimately did not debit the grandfather's account when it learned of the defendant's fraud, see Code § 8.4-213(1)(c), that fact does not create a fatal variance in this case. "[T]here is no requirement that the intended victim suffer actual pecuniary loss[,]" nor is "the offense . . . purged by ultimate restoration or payment to the victim." Quidley, 221 Va. at 966, 275 S.E.2d at 625.

In Martin v. State, 614 S.W.2d 512 (Ark. 1981), the defendant cashed several counterfeit checks drawn on the account of A. Tenenbaum Company, Inc., at separate branches of a bank. The bank initially debited the checks against Tenenbaum's account but credited the funds back to the account after learning that the checks were counterfeit. Id. at 513. On appeal, the defendant alleged that the information charging him with theft of property was defective because "the property in question, i.e., the money received from the bank upon presentment of the checks, was not in fact the property of A. Tenenbaum Company as alleged in the information." Id. The court disagreed, noting that the monies paid out on the counterfeit checks belonged to A. Tenenbaum Company. Id. at 514. The court further stated that "[t]he fact that under the law the bank is liable to its customer when it cashes a forged instrument does not alter the initial character of the crime of theft. It is the ownership at the time the offense

12

occurs that should be looked to, not who ultimately bears the loss." Id.

In distinguishing the decision in United States v. Pavloski, 574 F.2d 933 (7th Cir. 1978), from the present case, the majority relies on the fact that, in Pavloski, the bank initially debited its customer's account although the court stated that "these reductions in funds were temporary[,]" id. at 936, whereas the bank in the present case never debited the grandfather's account. I do not believe that the pivotal factor should be whether a bank initially debits its customer's account but later credits the funds back to the customer, or never debits the account because the bank learns of the fraud before the debit transaction is completed. In either event, the bank suffers the pecuniary loss even though it is not the intended victim. But, the crime of larceny by false pretenses is not "purged by ultimate restoration or payment to the victim." Quidley, 221 Va. at 966, 275 S.E.2d at 625.

As the Court of Appeals stated, the issue in this case "is not the abstract nature of the bank's underlying civil liability to [the defendant's] grandfather[,]" but rather the transaction engaged in by the defendant. Gardner, 32 Va. at 599-600, 529 S.E.2d at 822. The crime of larceny by false pretenses is complete "when the fraud intended is consummated by obtaining the property sought by means of the false representations[.]" Quidley, 221 Va. at 966, 275 S.E.2d at 625. In this case, that occurred at the moment when the defendant obtained the money by using the

13

fraudulent withdrawal slip.  Furthermore, the defendant makes no showing that she was prejudiced or surprised by the proof offered at trial or that the indictment failed to give her fair notice of the nature of the charge pending against her.

For these reasons, I respectfully dissent and would affirm the judgment of conviction.