**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**VERITA CORRINE CARMICHAEL, Defendant**

Criminal No. 43/01

Territorial Court for the Virgin Islands

Division of St. Croix

September 6, 2002

MARIE JOHN-DRIGO, ESQ., Assistant Attorney General, Virgin Islands Department of Justice, Christiansted, St. Croix, VI, *Attorney for Plaintiff*

PAMELA LYNN COLON, ESQ., Christiansted, St. Croix, VI, *Attorney for Defendant*

ROSS, *Judge*

## MEMORANDUM OPINION

(September 6, 2002)

THIS MATTER is before the Court on Defendant's Motion for Judgment of Acquittal pursuant to FED. R. CRIM. P. 29. Carmichael argues that her convictions for 27 counts of Obtaining Money by False Pretenses should be vacated due to a material variance between the charges in the Information and the evidence presented at trial. Carmichael also argues that the government did not present sufficient evidence to disprove her good faith defense.

## STANDARD OF REVIEW

■ On a Rule 29 motion for a judgment of acquittal, the Court must approach the evidence from the standpoint most favorable to the government and assume the truth of the evidence offered by the prosecution. *See Government of the Virgin Islands v. Grant.* 19 V.I. 440 (Terr. Ct. 1983). In other words, the standard is whether, in viewing all the evidence adduced at trial in the light most favorable to the government, there is substantial evidence from which a jury could find guilt beyond a reasonable doubt. If on this basis there is substantial relevant evidence justifying an inference or finding of guilt by the jury, the motion for acquittal must be denied. *See id.* The standard does not differ when the Government's case is based on circumstantial rather than direct evidence. *See id,* citing *United States v. Boyle,* 402 F.2d 757 (3d Cir. 1968).

## THE GOVERNMENT'S EVIDENCE

Carmichael worked for Dr. Larry Smith as an office manager for his private medical practice, the Caribbean Allergy Center. The evidence established that Dr. Smith visited the St. Croix office for one week every month for the purpose of seeing patients. Dr. Smith also owned a home on St. Croix, where Carmichael stayed when he was off-island.

By virtue of her employment Carmichael had access to the Caribbean Allergy Center's checkbook for its Banco Popular account, and a rubber stamp bearing the signature of Dr. Smith. One of Carmichael's duties as office manager was to complete insurance forms, which require the doctor's signature. Therefore, she had the authority to use the signature stamp to provide Dr. Smith's signature on those forms. The signature stamp was to be used to complete insurance forms only. All checks written from the Caribbean Allergy Center check book also required Dr. Smith's signature. Carmichael did not have authority to use the signature stamp to sign Caribbean Allergy Center checks. The Caribbean Allergy Center checkbook contained 3 checks per page. The last ten pages of the book (checks numbered 01271 through 01300) and their corresponding memorandum stubs had been removed. Carmichael told a co-worker, Mrs. Betty Braswell, that she had removed checks out of the back of the book after they were damaged by water from Hurricane Lenny.[1]

---

[1] Hurricane Lenny occurred in November of 1999.

However, Mrs. Braswell later discovered that Carmichael used the signature stamp to complete at least twenty-seven Caribbean Allergy Center checks, numbers 1271, 1272, 1274-1283, 1285-1288, 1290, 1292-1300, between October 1999 and April 2000 for various amounts totaling $12,134.00. The checks were cashed out of sequence, with the last page of checks cashed first.

Carmichael claims that she had the authority to write the checks and that the money was used for legitimate expenses associated with running Dr. Smith's business and with taking care of his home. Dr. Smith, however, testified that he purchased all necessary supplies for both his home and his office and also kept a petty cash reserve in the office for emergencies. Defendant was never required to go to the bank to get money for any reason, and that the amounts received by Carmichael through the checks at issue were not used for any expenses associated with running his business or with taking care of his home. To further counter Defendant's claims, numerous checks and check stubs from the Banco Popular account and Dr. Smith's two other accounts in Georgia were admitted into evidence through Dr. Smith which showed that he had paid expenses associated with the running of his business and the care of his home for the period in question. Dr. Smith also detailed his practice with regard to the payment of expenses. He testified that he would complete the check including the name of the payee, the date, the amount and the purpose of the checks. In those cases where the amount of the bill was not known, he would leave that section for Carmichael to complete once she received the bill. Defendant would then record this amount on the corresponding check stub, which remained inside the checkbook. Several checks, with their corresponding memorandum check stubs, which were completed in this fashion were admitted into evidence. All of the checks and check stubs, excluding the checks which were the subject of the criminal action, were written and recorded in sequential order by date and check number.

The evidence also established that, aside from Dr. Smith, Carmichael was the only person with access to the post office box to which the bank statements and returned checks would have been mailed. When Dr. Smith stopped receiving bank statements, as was the custom, he asked her about them. She had varying explanations for their absence. Dr. Smith became concerned about those bank statements and the fact that his business was not prospering. He asked the allergy technician in his

Georgia office, Betty Braswell, to investigate. Carmichael's actions were uncovered after Mrs. Braswell obtained duplicate bank statements. When confronted by Mrs. Braswell, Defendant admitted to taking the funds in question and mentioned that she was receiving calls from a collection agency. Carmichael offered to repay the full amount, and did in fact repay $10,000.

Based on these facts, the Government charged Carmichael with 27 counts of obtaining money by false pretenses and one count of embezzlement. Defendant was convicted on the 27 counts of obtaining money by false pretenses, while the government dismissed count 28.

## MATERIAL VARIANCE BETWEEN THE INFORMATION AND THE EVIDENCE ADDUCED AT TRIAL

Under 14 V.I.C. § 834, one obtains money under fake or false pretenses by "knowingly and designedly, by false or fraudulent representation or pretenses, defrauding any other person of money or property." The 27 counts for which Carmichael was convicted all read, in relevant part, that Carmichael

> did knowingly, unlawfully, and designedly, through false and fraudulent representation defraud another, namely Caribbean Allergy Center, out of money or property ... to wit: by completing and endorsing stolen check number ... belonging to Caribbean Allergy Center in the amount of ... and by receiving said amount, in violation of Title 14 V.I.C. § 834(2).

█ Carmichael argues that the proof at trial differed materially from these charges, thereby creating a fatal material variance requiring a judgment of acquittal. In order for this Court to grant such relief, Carmichael must first show that there was a variance. Secondly, she must show that this variance prejudiced some substantial right. "Variance between indictment and proof occurs when charging terms are unchanged but evidence at trial proved facts materially different from those alleged in the indictment." *United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996). To show prejudice required to establish fatal variance between the indictment or information and the proof, Carmichael must generally show: (1) that the information either did not sufficiently inform her of the charges against her so that she could prepare her defense and not be misled or surprised at trial, or, (2) that the variance created a

danger that Defendant could be prosecuted for a second time for the same offense. *See id.*

Carmichael argues that the facts adduced at trial, at best, supported the charge of embezzlement, not obtaining money under false pretenses, and since the evidence supported a different crime than the one charged, the variance was fatal. To support this claim, she relies heavily on *Government of the Virgin Islands v. Ellis*, 21 V.I. 317 (Terr. Ct. 1985). *Ellis* described the differences, under Virgin Islands law, between obtaining money under false pretenses and embezzlement:

> Where one honestly receives the possession of goods under circumstances of trust and confidence and after receiving them fraudulently converts them to his own use, it is ... a case of embezzlement. If, however, the possession is obtained by fraud, trick or devise, and the owner of the property intends to part with his title when he gives up possession, the offense, if any, is obtaining money under false pretenses. 21 V.I. at 321, quoting 26 AM JUR 2d, Embezzlement, § 6.

■ Defendant emphasizes that she honestly received possession of Caribbean Allergy Center's checkbook and Dr. Smith's signature stamp under circumstances of trust and confidence, and, due to her lawful possession and authority to use these items, she could not have been convicted of obtaining them through false pretenses. However, Defendant ignores the fact that she was charged with obtaining *money* by false pretenses, not obtaining checks by false pretenses. While Carmichael may have had lawful possession of and limited authority to use the checkbook and signature stamp, the government's evidence sufficiently supports the government's contention that Carmichael did not have authority or Dr. Smith's consent to use those items in the manner charged. Carmichael designated herself as payee on 27 checks belonging to the Caribbean Allergy Center, affixed without authority the rubber stamp signature of Dr. Smith, and presented them to Banco Popular for payment out of the Caribbean Allergy Center's account. By doing so, she made false representations to the bank that those checks were signed by Dr. Smith and that she had a right to obtain the amount written on each of those checks from the Caribbean Allergy Center's account. In reliance on that representation, Banco Popular, the party in possession of the Caribbean Allergy Center's money and acting on

38

behalf of the Caribbean Allergy Center, gave Carmichael the cash equivalent of the amount written on each check and debited those amounts to Caribbean Allergy Center's account. The jury could reasonably use these facts to infer that Carmichael did not honestly possess this cash under circumstances of trust and confidence, but rather by fraud, trick or devise. Under such circumstances, Defendant did not commit embezzlement; she obtained money by false pretenses.

■ A variance between the Information and the evidence does not occur if the information charges all the material elements of a crime, and the evidence proves those elements. The material elements of obtaining money under false pretenses, under 14 V.I.C. § 834, are that defendant intended to defraud her victim, defendant actually defrauded her victim, and that defendant made a false or fraudulent representation in order to obtain the victim's money. The jury could reasonably infer that Carmichael intended to defraud the Caribbean Allergy Center when she wrote the office checks of Caribbean Allergy Center's Banco Popular account out to herself, used Dr. Smith's signature stamp to sign the checks without Dr. Smith's knowledge or consent, and negotiated them for her benefit. The false representations were the 27 checks themselves. By presenting those checks, Carmichael falsely represented that they were signed or at least authorized by Dr. Smith and that she was authorized to take the amount written on each of those checks out of the Caribbean Allergy Center's account. Carmichael made those false representations to Banco Popular, Caribbean Allergy Center's bank, in order to obtain the Caribbean Allergy Center's money. The Caribbean Allergy Center was actually defrauded, in that it suffered financial loss through Carmichael's deception, when Banco Popular debited the money Carmichael obtained from the 27 checks to the Caribbean Allergy Center's account. *See Commonwealth v. Gardner*, 262 Va. 18, 546 S.E. 2d 686 (2001), (reversing the defendant's conviction for obtaining money by false pretenses because the evidence showed that bank to which she presented a forged check did not debit the account of the victim named in the indictment, thereby leading to a material variance in that it was the bank, not the alleged victim, who was defrauded.) Therefore, from these facts and circumstances, there was sufficient evidence for the jury to conclude that the material elements of 14 V.I.C. § 834 were proven at trial. Accordingly, this Court finds no variance between the Information and the evidence.

## SUFFICIENCY OF EVIDENCE AGAINST CARMICHAEL'S GOOD FAITH DEFENSE

Defendant also argues that the Government failed to establish beyond a reasonable doubt that she had not acted in good faith, or was not simply mistaken, regarding the extent of her authority to write Caribbean Allergy Center checks to herself, use Dr. Smith's signature stamp to complete those checks and cash them. She argues that she believed she had this authority because 1) she was given access to, and had authority to possess the Caribbean Allergy Center check book, 2) she was also given this signature stamp and was further given the authority to use the stamp, 3) Dr. Smith never told her that she did not have the authority to use the signature stamps to sign his name to Caribbean Allergy Center checks 4) she signed his name on gross receipt tax documents, 5) she registered his car, 6) she occasionally covered his expenses out of her own funds for which she was reimbursed by office checks and 7) Dr. Smith had torn blank checks out of the office check book and given them to her to take care of his household needs.

Upon reviewing the sufficiency of the evidence to sustain a conviction, it is not the role of the Court to weigh the evidence or to determine the credibility of the witnesses. This Court must view the evidence in the light most favorable to the government and sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt. *See United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Since Carmichael asserts that there is insufficient evidence of her knowledge that she didn't have authority to write Caribbean Allergy Center checks to herself, this Court has reviewed the trial transcript to determine whether, viewing all the testimony in the light most favorable to the government, the jury could have rationally found that Carmichael knew she did not have such authority.

Carmichael argues that since she had authority to sign Dr. Smith's name in other situations and since defendant had written and signed checks reimbursing her for money she spent in the past, the government did not prove that she did not honestly believe that she was authorized to sign his name on 27 different checks written to herself and cash them. While it is true that Dr. Smith never testified that he had specifically advised Defendant that she did not have the authority to use the signature

40

stamp on office checks, a jury can infer that she had such knowledge based on a totality of the circumstances.

Defendant's actions subsequent to the time Dr. Smith allegedly gave her checks out of the back of the checkbook and instructed her to use for his household expenses are particularly relevant. Defendant's co-worker, Betty Braswell, testified that in November of 1999, Carmichael told her that the office checkbook had been damaged by water from Hurricane Lenny and that she (Carmichael) had to destroy many checks out of the back of the checkbook. A Caribbean Allergy Center checkbook, ending with check number 1270, was admitted into evidence. Mrs. Braswell confirmed that this was the same checkbook she and Defendant had discussed. Dr. Smith never testified that he gave her blank checks out of the back of this checkbook. In fact, Dr. Smith testified that Carmichael said she had destroyed checks that had been damaged by water. Since Carmichael had started cashing the last page of checks in October and told her boss and her co-worker that she destroyed those checks in November, the jury could have reasonably discounted Carmichael's version of how she received those checks.

The evidence shows that Defendant took further steps to conceal her actions from her boss and co-worker. Carmichael cashed the first unauthorized check in October of 1999. Dr. Smith testified that in late 1999, around November, he had stopped receiving statements from Banco Popular. Other than himself, Carmichael was the only person with access to the Caribbean Allergy Center's mailbox. Carmichael told Dr. Smith on one occasion that either the bank statements had been lost or had not come through the mail. On another occasion, she told him that the bank statements were no longer coming every month; they came bimonthly. Mrs. Braswell testified that when she asked Carmichael about the missing bank statements, Carmichael told her that the bank didn't give bank statements like they do in the states. Mrs. Braswell then obtained duplicate bank statements. She discovered that the checks Carmichael claimed to have destroyed had cleared the bank. She then spoke with Carmichael about the bank statements and the checks. Carmichael admitted that she took the money and that she was receiving phone calls from an agency trying to collect on a grant.

■ This Court finds that, regardless of whether or not Carmichael lawfully possessed the checkbook and the signature stamp, regardless of whether or not she had authority to use those items in other ways for

41

other purposes, and regardless of whether or not Dr. Smith reimbursed her for past expenditures she may have made, from the nature of her misrepresentations to Mrs. Braswell and to Dr. Smith, the jury could have reasonably inferred that Carmichael did not believe she was acting on a good faith belief in her authority to sign Dr. Smith's name to checks numbered 1271, 1272, 1274-1283, 1285-1288, 1290, 1292-1300 and that she was not acting on a good faith belief that she had the authority to use those checks to obtain the Caribbean Allergy Center's money when she presented them to Banco Popular. Furthermore, this Court finds that Carmichael's admission that she took the money constituted evidence sufficient for the jury to find beyond a reasonable doubt that Defendant did not have a good faith belief that she had authority to use the signature stamp and checks to reimburse herself for expenditures she allegedly made on behalf of Dr. Smith.

However, the Government's evidence went further. It not only disproved Carmichael's defense that she had a good faith belief that Carmichael was reimbursing herself for money she spent on Dr. Smith's behalf, it also showed that she did not spend the money on expenses for which she claimed to have reimbursed herself. The government submitted numerous checks for home and office expenses written by Dr. Smith during the period in question. Checks from October 1999 to April 2000, covering office expenses were introduced. The government also presented checks written for utilities, lock services, answering service, cell phone service, government taxes. Also presented were checks for license renewal, office rent, work on locks, advertisement in newspapers, and radio ads. These were drawn on Dr. Smith's office accounts in Sun Trust Bank in Georgia and he personally signed all those checks. The government also introduced checks signed by Dr. Smith, written on another office account in Nations Bank of South Georgia. These checks covered maintenance services for his alarm system, insurance for his house, painting the house, pool service and maintenance. The government also introduced checks written on Banco Popular St. Croix for IRS, accountants, pool services, telephone services, advertisements, office supplies, Water and Power, radio ads, and office rent, all signed by Dr. Smith. Dr. Smith did testify that Carmichael had spent money on his behalf. He also testified that he reimbursed her for that money, and the check he used to do so was admitted into evidence. That check was not one of the 27 mentioned in the Information. The jury could have thus

42

concluded that Dr. Smith had already reimbursed Carmichael for money she spent on his behalf. The jury could have used all the physical evidence to conclude that Carmichael did not spend money, other than that for which she had already been reimbursed, for Dr. Smith's expenses in the first place. Therefore, they could have also reasonably concluded that Carmichael did not have a good faith belief that she was reimbursing herself.

## CONCLUSION

Viewing all the evidence in the light most favorable to the government, this Court finds that the government presented sufficient evidence for the jury to find beyond a reasonable doubt that Carmichael did not have a good faith belief that she had authority to use the signature stamp to sign the checks in question in order to reimburse herself for expenditures allegedly incurred on behalf of the Dr. Smith. This Court also finds that the material elements of obtaining money by false pretenses in the 27 count Information were proven by the government's evidence. Therefore, this Court will deny Defendant's Motion for Judgment of Acquittal.