COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Athey and Chaney


DONTAY MILSAP

MEMORANDUM OPINION[*] BY
v.      Record No. 0794-21-1       CHIEF JUDGE MARLA GRAFF DECKER
                                   MAY 10, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Michelle J. Atkins, Judge

(J. Barry McCracken, Assistant Public Defender, on briefs), for
appellant.  Appellant submitting on briefs.

(Jason S. Miyares, Attorney General; Craig W. Stallard, Senior
Assistant Attorney General, on brief), for appellee.  Appellee
submitting on brief.


Dontay Milsap was convicted in a bench trial of burglary in violation of Code § 18.2-91.

He argues on appeal that the indictment was defective because it failed to state a valid offense.

Additionally, he contends that there was a fatal variance between the offense charged and the

evidence presented at trial.  For the following reasons, we hold there was a fatal variance and

reverse the appellant's conviction.  Accordingly, we do not address the appellant's claim that the

indictment was defective.[1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Because we do not reach the appellant's claim that the indictment was defective, we
also do not consider the Commonwealth's related argument that the appellant waived the claim
by failing to raise it with specificity in the trial court.  *See, e.g.*, *Commonwealth v. Swann*, 290
Va. 194, 196 (2015) (recognizing that appellate courts decide cases on the "best and narrowest
grounds").

# I. BACKGROUND[2]

At about 5:00 a.m. on October 18, 2020, Tamara Foster awoke to find the appellant in her bed beating her in the head. After Foster ran to her adjacent bathroom, the appellant broke a panel in the bathroom door in an effort to gain entry. Foster left the bathroom and tried to calm the appellant. She smelled beer on him and believed he was intoxicated. Foster sat with him in her living room until he fell asleep. Then she ran to her cousin's nearby residence and called the police.

Officer J.A. Plaza of the Norfolk Police Department responded to Foster's call regarding the incident. At trial, he described Foster as "trembling" and "visibly upset." She had swollen eyes and scratches on her neck or face. Plaza observed that Foster's bed was "in disarray" and there was blood on the pillow. A window in the living room was broken, and most of the glass was inside on the couch, along with a pole or other "kind of instrument."

The appellant had left his wallet at Foster's residence, and Officer Plaza arrested him when he returned to get it. Although the appellant had told Foster earlier that morning that he had broken the window, he told Plaza he did not break it. Instead, he said Foster had let him into her apartment. He admitted damaging the bathroom door but denied injuring Foster. The appellant said that he and Foster were "in a relationship" and he had lived with her in the past but was currently homeless.

Foster testified at trial that she had previously given the appellant a key to her apartment so he could take a shower. She also said that he sometimes stayed overnight. Foster admitted having sexual relations with him but claimed they were not "in a relationship." She said that the

---

[2] In accordance with familiar principles of appellate review, the facts are recited in the light most favorable to the Commonwealth, as the prevailing party at trial. *See Sarka v. Commonwealth*, 73 Va. App. 56, 59 (2021); *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*).

appellant and his father had been at her apartment on the afternoon of the previous day. They were playing dominoes and drinking beer, but they left after the appellant pushed her and she asked him to return her key. Foster said her doors were locked and the windows "intact" when she went to bed about midnight.

The indictment returned by the grand jury stated:

> On or about October 18, 2020, in the City of Norfolk, Dontay Milsap did feloniously enter in the daytime the dwelling house or an adjoining occupied outhouse of Tamara Foster, with intent to commit larceny a [*sic*] or [a] felony [arson offense] in violation of §18.2-77, §18.2-79 or §18.2-80.
>
> Va. Code §18.2-91.

At the close of the Commonwealth's case at trial and again after the appellant presented his case, he made a motion to strike the evidence. He contended in part that the evidence failed to prove he entered the property with an intent to commit any of the larceny or arson offenses listed in the indictment. The trial court acknowledged that Code § 18.2-91 was "much longer than the indictment," but it ruled that the indictment nonetheless provided "notice that [the charge was] under [Code §] 18.2-91 for burglary." On that basis, the court denied the motions and convicted the appellant of burglary. He was sentenced to three years of incarceration with two years suspended.

## II. ANALYSIS

The appellant's indictment charged him with violating Code § 18.2-91 by entering Foster's dwelling in the daytime with intent to commit larceny or a felony related to arson. He argues that his conviction must be reversed because there is a fatal variance between the indictment and the evidence presented at trial. Specifically, he contends that the evidence did not show he entered with the intent to commit larceny or arson.

The Commonwealth concedes that the appellant's conviction should be reversed because there is a fatal variance. "Such admissions embody the ethical duties expected of a legal advocate for the Commonwealth and are held in high esteem." *Joseph v. Commonwealth*, 64 Va. App. 332, 336 n.2 (2015). "Concessions of legal error, however, do not relieve the appellate court of its responsibility to perform its judicial function. While such concessions are entitled to great weight, they do not remove the Court's obligation to conduct its own review." *Id.*; *see Copeland v. Commonwealth*, 52 Va. App. 529, 531-32 & n.3 (2008). The legal issue before us presents a mixed question of fact and law and is reviewed *de novo*. *See Dunaway v. Commonwealth*, 52 Va. App. 281, 299 (2008).

The purpose of an indictment is to give an accused written notice of "the nature and cause of the accusation against him." *Scott v. Commonwealth*, 49 Va. App. 68, 73 (2006) (quoting *Hairston v. Commonwealth*, 2 Va. App. 211, 213 (1986)). A variance occurs when the indictment differs from the proof at trial, but not every variance is fatal. *See* Code § 19.2-226 (listing defects that do not invalidate an indictment); *Purvy v. Commonwealth*, 59 Va. App. 260, 266 (2011) (noting that a variance is not fatal if it "does not undermine the integrity of the trial"). "[A] fatal variance occurs where the indictment charges a wholly different offense than the one proved . . . ." *Purvy*, 59 Va. App. at 266-67.

This Court's decision in *Purvy* is instructive. In *Purvy*, the defendant was charged with failing to register or reregister as a violent sex offender but was convicted for knowingly providing materially false information on his reregistration forms. *Id.* at 264, 267. Both crimes came under Code § 18.2-472.1(B) but were separate offenses having "different fact patterns [and] dissimilar legal elements." *Id.* at 268. Generally, "an indictment citing a criminal statute incorporates its contents by reference." *Id.* This principle did not apply in *Purvy* because the

indictment included additional language that narrowed the scope of the crime charged from the broader statutory reference. *Id.* at 268-69. Accordingly, a fatal variance existed. *Id.* at 269.

Code § 18.2-91 provides in part that a person is guilty of statutory burglary if he "commits any of the acts mentioned in § 18.2-89 or § 18.2-90 with intent to commit assault and battery," but the appellant was specifically charged with entering with intent to commit larceny or an arson-related crime. The scope of Code § 18.2-91 was narrowed by both the specific reference to the intent to commit larceny or arson and the omission of any reference to the intent to commit assault and battery. The stated intent in the indictment described the offense and had to be proved. *See Vincent v. Commonwealth*, 276 Va. 648, 652 (2008) (reversing a conviction for violating Code § 18.2-91 because intent was a required element of the offense and was not proved). Consequently, the offense had to be proved as charged. *See Mitchell v. Commonwealth*, 141 Va. 541, 560 (1925). There was no proof here, however, that the appellant intended to commit *larceny or arson* when he broke into Foster's residence.[3]

"[A] variance is fatal . . . when the proof is different [from] and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged." *Scott*, 49 Va. App. at 73 (second and third alterations in original) (quoting *Griffin v. Commonwealth*, 13 Va. App. 409, 411 (1991)). Because a fatal variance existed in the

---

[3] The appellant was convicted in general district court of assault and battery of Foster.

appellant's case, his conviction must be reversed and the indictment dismissed.[4] *See Gardner v. Commonwealth*, 262 Va. 18, 25 (2001) (vacating the defendant's conviction and dismissing the indictment because a fatal variance existed between the indictment and the evidence); *Scott*, 49 Va. App. at 76-77 (reversing the defendant's burglary conviction under Code § 18.2-91 and dismissing the indictment because although he was charged with "entering in the nighttime," the evidence showed that he entered in the daytime and he was convicted of "breaking and entering anytime," an offense not charged in the indictment).

## III. CONCLUSION

We hold that there is a fatal variance between the indictment and the evidence presented at trial. Accordingly, we reverse the appellant's conviction and dismiss the indictment.

*Reversed and dismissed*.

---

[4] We take no position regarding whether the appellant may be retried under a new indictment charging burglary based on an intent to commit assault and battery, an issue not raised by the parties. *See generally* Code § 19.2-293 (permitting reprosecution following an acquittal based on a fatal variance under certain circumstances); *Montana v. Hall*, 481 U.S. 400, 404 (1987) (per curiam) (addressing the circumstances under which the U.S. Constitution "permits retrial after a conviction is reversed because of a defect in the charging instrument"); *Purvy*, 59 Va. App. at 269-71, 273-74 (reversing a conviction due to a fatal variance but resolving the appellant's challenge to the sufficiency of the evidence to prove the unindicted offenses in favor of the Commonwealth and holding under those circumstances that retrial on a new, corrected indictment would not constitute double jeopardy).