Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Whiting, Senior Justice

LYNN CHERYL DALE CRAVER-FARRELL,
ADMINISTRATRIX C.T.A. OF THE ESTATE
OF DORIS M. DALE, DECEASED
                                                OPINION BY
v.  Record No. 950793          SENIOR JUSTICE HENRY H. WHITING
                                             March 1, 1996
GLADYS C. ANDERSON AND RALPH L. ANDERSON

            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                      L. Cleaves Manning, Judge


      In this appeal, we consider whether the presumption of
survivorship provided in Code § 6.1-125.5(A) applies to funds
formerly held in joint bank accounts, but no longer so held at
the time of the death of one of the parties to those accounts.

      Since the survivors to the former joint accounts in issue
prevailed in the trial court, we consider the evidence in the
light most favorable to them.  That evidence appears in the
following summary of their testimony.

      Ralph L. Anderson and Gladys C. Anderson, his wife, were
close friends of Harvey LeRoy Dale, Jr., and Doris M. Dale, his
wife, for a number of years before Mr. Dale's death in August
1990.  The Dales had a daughter, Lynn Cheryl Dale Craver-Farrell,
a resident of western Canada, from whom they were estranged.

      Six or seven months before his death, Mr. Dale asked Mr.
Anderson to "look out for [Mrs. Dale]" after his death.  Shortly
after Mr. Dale's death following a lengthy illness, Mr. Anderson
told Mrs. Dale that her husband had asked him "to assist her as
well as [he] could," and Mrs. Dale "was very well pleased about
this situation."

      Although the Andersons never gave Mrs. Dale any investment

or financial advice, they provided substantial assistance to her for more than a year while Mrs. Dale was living at home following her husband's death. During this period, Mrs. Dale converted her four individual bank accounts and a bank certificate of deposit into multiple party accounts aggregating over $260,000 in her name and that of Mrs. Anderson, each of them being authorized signatories (the Dale-Anderson joint accounts). Mrs. Anderson testified that this was done to assist Mrs. Dale "in whatever she wanted me to do." Although Mrs. Anderson filled out checks drawn on these accounts, Mrs. Dale signed each one. Later, Mrs. Dale added Mr. Anderson's name to one of the Dale-Anderson joint accounts.

Mrs. Anderson testified that Mrs. Dale had repeatedly advised her that the money in the Dale-Anderson joint accounts was to be used for Mrs. Dale's benefit during her life, and that at Mrs. Dale's death, the funds "were to be used by my husband and myself, they were to go to us."

Mrs. Dale fell and injured her leg in January 1992. Thereafter, Mrs. Dale was hospitalized or living in a nursing home until her death in December 1992. After Mrs. Dale was injured, Mrs. Anderson began filling out and signing all checks drawn on the Dale-Anderson joint accounts. The Andersons also took charge of Mrs. Dale's house and caused Mrs. Dale's mail to be sent to their house.

From January 14 through May 4, 1992, Mrs. Anderson

-2-

transferred the balances in four of the five Dale-Anderson joint accounts (the transferred Dale-Anderson joint accounts) to three joint bank accounts and one joint bank certificate of deposit, all solely in the Andersons' names (the Anderson joint accounts). Mrs. Anderson testified that Mrs. Dale had asked her to make these transfers "because she figured there was still some way that [Craver-Farrell] could get her money and she wouldn't have any money."

There was no question in the Andersons' minds that these funds belonged to Mrs. Dale during her lifetime.[1] Neither the funds, nor interest accumulating thereon, were used while Mrs. Dale was alive, either for the benefit of Mrs. Dale or the Andersons. Instead, the Andersons paid Mrs. Dale's expenses from the remaining Dale-Anderson joint account.

On January 16, 1992, Mrs. Dale executed a general power of attorney naming Mrs. Anderson as her attorney in fact. On February 3, 1992, Mrs. Dale executed a will leaving all her property to Craver-Farrell and nominating Mrs. Anderson as executor of her estate. In both instruments, Mrs. Dale designated Mr. Anderson as Mrs. Anderson's successor.

Using the general power of attorney, the Andersons sold Mrs. Dale's car for $7,200 on August 31, 1992, and deposited the

---

[1]In the absence of clear and convincing evidence of Mrs. Dale's intent to give these funds to the Andersons during Mrs. Dale's lifetime, the funds would have belonged to Mrs. Dale during her lifetime under the provisions of Code § 6.1-125.3(A).

proceeds in one of the Anderson joint accounts. Claiming that Mrs. Dale had given her a number of articles of personal property, Mrs. Anderson removed items from Mrs. Dale's house both before and after her death.

Upon the Andersons' refusal to qualify as the executor or successor executor of Mrs. Dale's estate, Craver-Farrell qualified as administratrix c.t.a. of the estate. In that capacity, Craver-Farrell brought this action against the Andersons to recover the proceeds from the sale of Mrs. Dale's car, the items of personal property Mrs. Anderson had removed from Mrs. Dale's house, and the funds traceable to the transferred Dale-Anderson joint accounts and now held by the Andersons.

The Andersons filed an answer denying the substance of the plaintiff's claims and also filed a counterclaim seeking to recover the amounts of Mrs. Dale's funeral bill and other bills they had paid from the remaining Dale-Anderson joint account following Mrs. Dale's death.

After hearing the evidence and argument of the parties in a bench trial, the trial court advised the parties that it would dismiss the counterclaim and require the Andersons to pay the plaintiff the proceeds from the sale of Mrs. Dale's car and to return certain items of the personal property Mrs. Anderson had removed from Mrs. Dale's house. After receiving briefs on the issue of the Dale-Anderson joint accounts, the trial court later

entered judgment "in favor of [the Andersons] on the Central Fidelity Bank account . . . , the Dominion Bank money market account . . . , the Cenit Bank certificate of deposit . . . , the Commerce Bank savings account . . . , and the Dominion Bank checking account . . . ." These accounts are the transferred Dale-Anderson joint accounts and the Dale-Anderson joint account that remained on the date of Mrs. Dale's death. The plaintiff appeals that portion of the judgment dealing with the transferred Dale-Anderson joint accounts.

Code § 6.1-125.5(A) provides in pertinent part that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party . . . as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." (Emphasis added.) Since the transferred Dale-Anderson joint accounts had been closed prior to Mrs. Dale's death, the plaintiff contends that the trial court erred in applying the statutory presumption of survivorship.

On the other hand, citing Higgins v. Bowdoin, 238 Va. 134, 140, 380 S.E.2d 904, 907-08 (1989), in which we applied the statutory presumption to an account subject to the statutory provisions, the Andersons claim that the trial court correctly applied Code 6.1-125.5(A). We agree with the plaintiff.

Higgins is inapplicable to this case because the amount in the Higgins joint account remained on deposit at the death of one

-5-

party to the account.  Instead, the principles of <u>Bennet v. First & Merchants National Bank</u>, 233 Va. 355, 360, 355 S.E.2d 888, 890-91 (1987), apply here.  In <u>Bennet</u>, the contested funds no longer remained on deposit in a joint account subject to Code § 6.1-125.5(A) when one of the parties thereto died.  For that reason, we refused to apply the statutory presumption in <u>Bennet</u>.

The Andersons assert that <u>Bennet</u> can be distinguished on its facts.  First, they note the evidence in <u>Bennet</u> of the decedent's good relationships with the parties who would have received the funds if the statute did not apply.  The Andersons then contrast that evidence with Mrs. Anderson's testimony of Mrs. Dale's estranged relationship with Craver-Farrell and of Mrs. Dale's intent that Craver-Farrell receive none of the funds traceable to the Dale-Anderson joint accounts on Mrs. Dale's death.

We do not think that this distinction affects the question whether Code § 6.1-125.5(A) applies in this case.  Our discussion of those relations in <u>Bennet</u> was material only in considering whether the survivor had sustained her burden of showing a gift of the joint investment.[2]  <u>Id.</u> at 361, 355 S.E.2d at 891-92.

_____

[2]Without citation of any authority, the Andersons make a passing reference in their brief to Mrs. Dale's intention "to make a gift of the funds to Mr. and Mrs. Anderson."  However, our review of the entire record fails to disclose a contention at trial by the Andersons that Mrs. Dale made an <u>inter</u> <u>vivos</u> gift of the funds traceable to the former Dale-Anderson joint accounts. Accordingly, we will not address this contention, made for the first time on appeal.  <u>Snyder-Falkinham v. Stockburger</u>, 249 Va. 376, 381, 457 S.E.2d 36, 39 (1995); <u>Eason v. Eason</u>, 204 Va. 347, 351-52, 131 S.E.2d 280, 283 (1963).

Therefore, we conclude that the trial court erred in applying the presumption provided in Code § 6.1-125.5(A). Accordingly, we will reverse the judgment awarding the Andersons the principal amounts of the transferred Dale-Anderson joint accounts held by the Andersons at the time of Mrs. Dale's death. We will remand the case with instructions to determine the interest that has accrued on these amounts since Mrs. Dale's death and to enter a new order awarding judgment in favor of the plaintiff for the principal amounts and accrued interest.

<u>Reversed and remanded</u>.