# CIRCUIT COURT OF FAIRFAX COUNTY

John C. Grubb

   v.

Maurice T. Yacoub et al.

March 18, 2014

Case No. CL-2012-10103

BY JUDGE ROBERT J. SMITH

This matter comes before the Court on a surviving spouse's petition, pursuant to Virginia Code § 64.1-16.2, for Determination of Elective Share of Augmented Estate and the Ratable Portion of the Elective Share Attributable to Each Person Liable to Contribution (the "Petition") filed by Petitioner John C. Grubb ("Petitioner"), on behalf of The Estate of Marvin J. Grubb ("Marvin"). Va. Code § 64.1-16.2 was repealed effective October 1, 2012, and recodified as Va. Code § 64.2-306.

## Background

Bertha and Marvin Grubb were lawfully married on June 15, 1980, in Charlottesville, Virginia. During their marriage, Bertha and Marvin individually and jointly owned eight financial accounts. Bertha individually held a savings account ("Bertha's Savings Account") and a checking account ("Bertha's Checking Account"). Bertha's social security and Virginia retirement benefits were directly deposited into her individual savings account. On August 30, 2004, Marvin's name was added to both Bertha's savings account and checking account. Marvin also individually held a savings account ("Marvin's Savings Account") and a checking account ("Marvin's Checking Account") in addition to his above listed two joint accounts with his wife.

Bertha and Marvin opened a joint money market savings account ("Money Market Account") on September 12, 2003. Bertha and Marvin jointly owned rental property known as 1122 Market Street, Charlottesville, Virginia ("Market Street Property") that was sold on August 12, 2004, for $170,500.00. They opened a joint annuity account, the Lincoln Account ("Lincoln Account"), on March 1, 2007. Both parties held individual retirement accounts with A. G. Edwards; they individually closed both retirement accounts and subsequently transferred all funds first to Bertha's Savings Account and then to the Lincoln Account. On July 15, 2009, this Court gave Bertha's sister, Marie Khoury, guardianship over Bertha. The Guardianship matter can be found in Fairfax County, Case No. 2009-9580. Respondent contends Bertha suffered from Alzheimer's five years prior to being appointed a guardian for the purposes of challenging Bertha's mental capacity at the time her checking and savings account were retitled as joint accounts. The Court, for purposes of determining Bertha's capacity pertaining to this matter, defers to the 2009 Guardianship case, which determined that Bertha needed a Guardian in 2009. Therefore, Bertha presumably had sufficient capacity to retitle financial accounts prior to 2009. Thereafter, Bertha's Guardian liquidated and divided the Lincoln account equally between Bertha and Marvin.

Bertha died on October 9, 2010. Her Last Will and Testament, dated November 20, 1987 ("Will") was probated in Fairfax County on November 15, 2010. The Defendant, Maurice T. Yacoub, qualified as Executor of Bertha's Estate on November 15, 2010. Marvin was omitted from the Will.

Marvin executed a Durable General Power of Attorney ("Power of Attorney") appointing the Petitioner as his attorney-in-fact. On December 10, 2010, Marvin filed a written Notice to Take Elective Share claiming his elective share of his late wife's augmented estate pursuant to Virginia Code § 64.1-16.13. Virginia Code § 64.1-16.13 was repealed effective October 1, 2012, and recodified as § 64.2-302. Marvin died on September 24, 2011. Petitioner qualified as the Executor of Marvin's Estate on December 21, 2011. Defendant, on behalf of The Estate of Bertha Khoury Grubb, filed

a Demurrer to Petitioner's claim for an elective share that was signed and properly acknowledged by the attorney-in-fact for the surviving spouse, but not the surviving spouse himself. On July 13, 2013, this Court overruled Defendant's Demurrer and held that Petitioner's claim to an elective share of Bertha's estate was a valid claim. *Grubb v. Yacoub,* 86 Va. Cir. 503 (2013).

Both parties filed briefs regarding the amount of Marvin's elective share. The Petitioner, on behalf of Marvin, requests that the Court award Marvin's estate a judgment in the amount of one half of Bertha's probate estate. Respondent seeks to augment Bertha's estate by including and excluding certain property. The property at issue is half of the proceeds from a real property sale, transfers made from a joint account, and Bertha's social security benefits.

## *Issues Presented*

The two questions before the Court are (1) whether to include proceeds from the Market Street Property sale and money transfers that originated from joint bank accounts in Bertha's estate and (2) whether to exclude Bertha's social security benefits, which were directly deposited into a joint account, from the estate pursuant to Virginia Code § 64.1-16.1.

## *Analysis*

The controlling statute, Virginia Code § 64.1-16.1, (the "Statute"), governs what property may be included and excluded from an augmented estate. The Statute defines an augmented estate as "the estate passing by testate or intestate succession, real and personal, after payment of all allowances and exemptions . . . funeral expenses, charges of administration . . . and debts." Va. Code § 64.1-16.1. Virginia Code § 64.1-16.1 was repealed effective October 1, 2012, and recodified as § 64.2-305.

The Statute allows for the inclusion of, *inter alia,* "[t]he value of property . . . derived by the surviving spouse from the decedent without full consideration in money or money's worth, and transferred by the surviving spouse at any time during the marriage to a person other than the decedent." Va. Code § 64.1-16.1(A)(1). Property is valued at the time of the decedent's death. Va. Code § 64.1-16.1(C). Property that is transferred irrevocably during the lifetime of the decedent, however, "is valued as of the date the transferee came into possession or enjoyment if that occurs first." *Id.* The definition of property includes insurance policies, retirement benefits exclusive of federal social security benefits, annuities, and pension plans "owned by, vested in, or subject to the control of the decedent on the date of his death or an irrevocable transfer by him during his lifetime." Va. Code § 64.1-16.1(D).

The Statute contains separate provisions regarding interests in property and interests in joint financial accounts:

An interest in a joint tenancy with survivorship is valued at the time the interest is acquired. Property owned jointly by persons married to each other shall be rebuttably presumed to have been acquired with contributions of equal value by each tenant . . . . An interest in a tenancy by the entirety shall be valued as if it were an interest in a joint tenancy with survivorship. Joint accounts in financial institutions shall be valued in accordance with the provisions of Article 2 of Chapter 6 of Title 6.2.

Va. Code § 64.1-16.1(C)(3). Under Article 2 of Chapter 6 of Title 6.2, "a joint account between persons married to each other shall belong to them equally . . . unless . . . there is clear and convincing evidence of a different intent." Va. Code § 6.2-606. Upon the death of a party to the joint account, sums remaining on deposit "belong to the surviving party as against the estate of the descendent unless there is clear and convincing evidence of a different intent at the time the account is created." Va. Code § 6.2-608.

In the instant case, Marvin seeks a determination of the amount of his elective share of Bertha's Estate. Marvin asserts that the Estate seeks to improperly include the value of joint property and money transfers and exclude Bertha's social security benefits from the augmented estate.

Respondent first contends that half of the proceeds from the Market Street Property sale that were deposited into Marvin's Savings Account should be included in the augmented estate. Second, Respondent seeks to include in the estate funds transferred from Bertha's checking and savings account to Marvin's savings account. Third, Respondent contends that the remains of the Lincoln Account should be divided between the Parties on a *pro-rata* basis rather than equally, and that the difference between the two sums should be included in the augmented estate. Finally, Respondent argues that social security benefits received by Bertha should be excluded from the augmented estate. The party seeking the inclusion or exclusion of property in the augmented estate has the burden of proof. *Chappell v. Perkins*, 266 Va. 413, 418, 587 S.E.2d 584 (2003).

The Court will determine which assets should be included in the augmented estate by addressing the Market Street property sale, the two sets of bank transfers, and Bertha's social security benefits in turn.

A. *Market Street Property Proceeds*

Bertha and Marvin jointly owned the Market Street Property, which sold for $170,500 on August 12, 2004. The parties stipulated that the property was sold for $170,500. Respondent later claimed "all the proceeds from the sale of the jointly titled real property" were $207,000 and that half of the Market Street Property Sale proceeds amount to $103,500. While it may be true that Marvin's "August, 2004 deposits totaled $207,000," the

Court defers to the parties' stipulated Market Street Property sale price of $170,500, half of which amounts to $85,250. Four days later, Marvin deposited all proceeds from the sale into his savings account. At issue is whether half of the proceeds, $85,250, should be included in Bertha's augmented estate.

"Property owned jointly by persons married to each other is rebuttably presumed to have been acquired with contributions of equal value by each tenant." Va. Code § 64.1-16.1(C)(3). An interest in joint property "received upon the death of a cotenant is valued at the time of the cotenant's death." Va. Code § 64.1-16.1(C). Since neither party rebutted this presumption, Bertha's share of the Market Street Proceeds is $85,250.

The Parties have not established that the deposit of Bertha's share into Marvin's Savings Account falls under one of the Statute's exceptions. See Va. Code § 64.1-16.1(B) (specifying that "the value of any property transferred by the decedent during marriage with the written consent or joinder of the surviving spouse" should not be included in the augmented estate). As such, Bertha's share of the Market Property Proceeds is unaffected by Marvin's deposit into his savings account on August 16, 2004. Half of the proceeds from the Market Street Property sale, $85,250, should be included in Bertha's augmented estate.

## B. *Bank Account Transfers*

Bertha and Marvin each owned checking and savings accounts under their respective names. During their marriage, on August 30, 2004, Marvin's name was added to both Bertha's checking and savings account as a joint account holder. Between November 9, 2004, and February 28, 2009, the parties stipulate that six transfers occurred between Bertha's Savings Account and Marvin's personal accounts. All transfers occurred after Bertha's Savings Account became a joint account. The transfers stipulated by the parties amount to $107,859.

The Statute instructs: "[j]oint accounts in financial institutions shall be valued in accordance with the provisions of Article 2 of Chapter 6 of Title 6.2." Va. Code § 64.1-16.1(C)(3). Article 2 provides in relevant part: "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." Va. Code § 6.2-608(A). Here, the issue is not sums remaining on deposit in a joint account but sums transferred out of the joint account prior to Bertha's death.

In *Craver-Farrell v. Anderson*, the Supreme Court of Virginia considered whether the presumption of survivorship under Virginia Code § 6.2-608(A) (then codified as § 6.1-125.5(A)) applied to funds formerly held in joint bank accounts but no longer held at the death of one of the parties to those accounts. 251 Va. 369, 369, 467 S.E.2d 770 (1996). There, a widow

converted four individual bank accounts into joint bank accounts under her name and the name of a caretaker. Over a four-month period, the caretaker transferred the balances of the joint accounts to a separate bank account. The Supreme Court held the presumption of survivorship does not apply to funds withdrawn from a joint account during the lifetime of the decedent and no longer held in a joint account at the time of the decedent's death. The case was remanded with instruction to award a new judgment in favor of the Estate.

*Carver-Farrell* has not been applied to transfers made from a joint account between married people. Joint accounts between individuals not married to each other are distinguishable from those between individuals married to each other. Va. Code § 6.2-606, below, articulates this distinction:

> A joint account belongs, during the lifetimes of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, except that a joint account between persons married to each other shall belong to them equally, and unless, in either case, there is clear and convincing evidence of a different intent.

Ownership is thus divided proportionally by net contribution among the former and equally among the latter.

An argument remains that, if Bertha's estate can trace the amount of money she held in her separate account prior to the retitling of the accounts, that money retained its identity as separate property and, therefore, should not automatically be deemed Marvin's. Regarding this argument, the Court will analyze transfers made from a joint marital account under Virginia Code § 20-107.3 governing the transmutation of separate property into marital property. The statute provides in relevant part:

> When separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification.

Va. Code § 20-107.3(A)(3)(f). The statute "presupposes that separate property has not been segregated but rather combined with marital property." *Rahbaran v. Rahbaran*, 26 Va. App. 195, 205, 494 S.E.2d 135 (1997). The party asserting that the property is separate "must prove that the claimed separate portion is identifiably derived from a separate asset." *Id.* at 208.

Here, Bertha created a separate savings account thirteen years after she married Marvin. In 2004, Bertha's Savings Account was retitled as a joint account under Bertha and Marvin's names. On the date the account was

retitled, the account held $347,366.98. Between 2004 and 2009, $107,859 was withdrawn from Bertha's, now joint, savings account to Marvin's personal accounts. In 2007, $171,600.78 was deposited into the joint account, $51,556.30 of which came from Marvin's retirement account. Based on these facts, the identity of the funds from Bertha's original savings account was lost by 2007. See *Asgari v. Asgari*, 33 Va. App. 393, 402, 533 S.E.2d 643 (2000) ("Under such circumstances, the court was unable to properly trace and preserve the integrity of the husband's separate property."). Respondent provides no evidence rebutting the presumption that the original $347,366.98 remained segregated. Accordingly, the money transferred out of the joint account to Marvin's private accounts constituted marital property belonging to Marvin, not separate property. The transfers totaling $107,859 will not be added to Bertha's augmented estate.

Respondent also contends that funds in the Lincoln Account before Bertha's death should have been divided between the parties in proportion to their net contribution. In April 2007, $171,600.78 was deposited into the Lincoln account. The Parties stipulated that $120,044.48 came from Bertha's liquidated retirement account and $51,556.30 from Marvin's liquidated retirement account. After Bertha received a guardian on July, 15, 2009, Respondent states the Petitioner and the guardian liquidated and divided the remainder of the Lincoln Account into equal parts of $318,000. Respondent contends the Lincoln Account should have been divided on a *pro-rata* basis rather than in equal halves. Dividing the account on a *pro-rata* basis rather than equally would have resulted in Marvin receiving $63,600 less than he did in 2009, which Respondent argues should be included in Bertha's augmented estate. Under Virginia Code § 6.2-806, however, sums in a joint account between married people are divided equally between the parties, unless there is clear and convincing evidence of a different intent by the parties. Petitioner has not established by clear and convincing evidence that Bertha and Marvin intended the Lincoln Account to be divided unequally.

Moreover, the $120,044.48 from Bertha's retirement account and $51,556.30 from Marvin's retirement account were deposited into Bertha's Savings Account, a joint account, before being transferred to their Lincoln Account. The transferred total of $171,600.78 into the Lincoln Account could thus be marital property rather than separate and individual contributions. The $63,600 proposed by Respondent will not be added to Bertha's augmented estate.

## C. *Social Security Benefits Deposited into a Joint Account*

Bertha received social security benefits that were directly deposited into her savings account until her death. Respondent is correct in stating that, for the purposes of an augmented estate, property to be added is "retirement benefits exclusive of federal social security benefits." Va. Code § 64.1-16.1(D). Under this section of the Virginia Code, Respondent would have

the burden of identifying the social security benefits. Here, Respondent provides the Court a tally of "year to year" social security deposits between 2004 and 2009. The deposits range from $1,415 and $1,674 and average to $1,524.33 per year. Respondent later states that Bertha received an average of $1,700 per month between 2009 and her death in 2010. It is unclear whether Respondent meant this average to be a yearly average or a monthly average. However, the property in question is not subject to probate because it is money that has been deposited into a joint account, which is governed by Virginia Code § 6.2-608. "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party as against the estate of the decedent." *Craver-Farrell v. Anderson*, 251 Va. at 373 (citing Va. Code § 6.1-125.5(A) recodified as § 6.2-608(A)). Petitioner has not established that there was a different intention at the time the joint account was created. *Id*. Thus, all money, including social security benefits, that remain in Bertha's Savings Account, a joint account, automatically belonged to Marvin after Bertha's death and are not part of Bertha's probate estate. See also *Holland v. Holland*, 53 Va. Cir. 512, 522 (1999) (noting that social security benefits on deposit in bank account at the time of separation were considered marital property for the purposes of equitable distribution). Thus, there are no social security benefits to be excluded from Bertha's augmented estate.

### D. *Purpose of the Statute*

Both parties point to the purpose of the Statute to support their positions. The purpose of Virginia Code § 64.1-16.1 is to protect the surviving spouse against disinheritance due to the decedent's having transferred property out of her estate before death. See *Tuttle v. Webb*, 284 Va. 319, 325, 731 S.E.2d 909 (2012) (explaining that the statutory purpose is to prevent one spouse from disinheriting the other by transferring property before the transferor dies); *Chappell v. Perkins*, 266 Va. 413, 421, 587 S.E.2d 584 (2003) (applying the Statute to property transferred by the decedent during marriage). Here, any transfers by Marvin, the surviving spouse, do not put him at risk of disinheritance, and the decision to not include transfers from joint bank accounts in Bertha's augmented estate preserves the purpose of the Statute.

### Conclusion

The determination of Marvin's elective share is as follows: half of the proceeds from the Market Street Property sale that were transferred to Marvin's Savings Account, $85,250.00, is to be added to Bertha's estate, and, after the addition, Marvin is to receive half of Bertha's augmented estate. Respondent's request to include in the augmented estate transfers from the joint accounts and to exclude from the augmented estate social security benefits deposited into a joint account are denied.