COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Malveaux and Senior Judge Frank
Argued at Newport News, Virginia


PHILLIP ROBERT BROOKS

MEMORANDUM OPINION* BY
v.      Record No. 1228-16-1      JUDGE MARY BENNETT MALVEAUX
DECEMBER 27, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Francis D. Mazzio, III, Deputy Public Defender (Mark A. Phillips,
Assistant Public Defender, on brief), for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Phillip Robert Brooks ("appellant") was convicted of obtaining money by false pretenses, in

violation of Code § 18.2-178. On appeal, appellant argues that a fatal variance existed between the

allegations of the indictment and the evidence introduced at trial. Appellant further argues that the

trial court erred in denying his motion to strike because the Commonwealth's evidence relied on the

testimony of an incredible witness. Finding no error, we affirm the judgment of the trial court.

I. BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial."

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*)

(quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In 2011, Olivia Shaw and appellant were involved in a romantic relationship. On December 22, 2011, appellant asked Shaw if she would cash a check for him because he did not have a bank account or identification. She refused the request at first because "it just didn't seem right," but acquiesced when appellant asked again the next day. Appellant told Shaw that his aunt was giving him the check, but would only write it out if he had someone to cash it for him. Appellant called his cousin and said that he had someone to cash a check, and Shaw "gave him [her] information."

Appellant's cousin arrived at Shaw's apartment and handed appellant a check, which was made out to Shaw in the amount of $1,500 from the Bank of America account of Cheryl Tucker. The three then went to a branch of Old Point National Bank located on West Queen Street in Hampton. When they arrived, the cousin told Shaw to deposit the check in the ATM. Shaw was unable to deposit the check in the ATM because she did not have her PIN number. She returned home to check her banking records to try to find her PIN number. Eventually she called the number on her debit card to try to obtain the PIN number. Shaw was told to speak with someone at the bank branch, so she returned to Old Point National Bank on West Queen Street with appellant and his cousin. A teller told her to call Bank of America to see if sufficient funds were available to cash the check. She relayed that information to appellant, who told her to "just . . . get the check and leave." She did so, and suggested that they go to a Bank of America branch, but appellant declined this offer. Instead, all three went to another Old Point National Bank branch on Executive Drive in Hampton. There, Shaw was able to deposit the check in a drive-through ATM. After depositing the check, Shaw withdrew $100, the only amount available to withdraw at the time. The remaining $1,400 cleared the bank the next day, at which time Shaw went to the original Old Point National Bank branch on West Queen Street with

appellant and his cousin. She withdrew the remaining $1,400 through a counter check made out to "cash," and gave appellant the money.

A week or two after depositing the check, Nichole Liedel, a security officer with Old Point National Bank, called Shaw to inform her that there was a stop payment order on the check she had deposited. As a result, Shaw's account was overdrawn. Liedel told Shaw that unless she repaid the amount deposited, the bank would contact the police. In January 2012, Shaw began making $40 monthly payments to Old Point National Bank. She continued these payments until May 2014. At that point, $535.22 remained to be repaid to the bank.

After learning about the stop payment order on the check, Shaw tried to contact appellant by leaving him voicemails, but he did not return her calls. Shaw did not know where appellant lived. She contacted Cheryl Tucker, whom she believed was appellant's aunt, by using the contact information on the check. Tucker is not appellant's aunt, and told Shaw that her house had been broken into and her checks had been stolen. Shaw went to the police department to file a report, but was informed that she could not do anything because she did not have appellant's address or any of his identifying information.

In 2014, Shaw saw appellant in her neighborhood and went back to the police department to file a report. Appellant was subsequently indicted for obtaining money by false pretenses, in violation of Code § 18.2-178. The indictment specifically charged appellant with "obtain[ing] by false pretense or token, United States Currency, having a value of $200.00 or more, belonging to Olivia Shaw, in violation of [Code] § 18.2-178 of the Code of Virginia (1950) as amended."

At trial, after the Commonwealth presented its case, appellant moved to strike the evidence. He argued that there was a fatal variance between the indictment and the evidence presented by the Commonwealth, based upon Gardner v. Commonwealth, 262 Va. 18, 546 S.E.2d 686 (2001). Appellant argued that, as in Gardner, the bank was the victim of the larceny,

and not Shaw. The Commonwealth argued that Gardner was not dispositive because in that case, the person named in the indictment was never in possession of the funds, while Shaw took possession of the money and then transferred it to appellant. Appellant also moved to strike the evidence because Shaw was not a credible witness.

The trial court agreed with the Commonwealth's interpretation of Gardner and denied the motion to strike based upon a fatal variance. It also denied the motion to strike in regard to Shaw's credibility, finding that the credibility determination was an issue for the finder of fact, the jury. The jury convicted appellant of obtaining money by false pretenses, in violation of Code § 18.2-178.

## II. ANALYSIS

### Fatal Variance

On appeal, appellant argues that the trial court erred in denying his motion to strike the evidence because a fatal variance existed between the indictment and the proof at trial. Appellant asserts that the language of the indictment charged appellant with obtaining currency belonging to Shaw, while the Commonwealth's evidence showed that the currency belonged to Old Point National Bank.

"An indictment is a written accusation of a crime and is intended to inform the accused of the nature and cause of the accusation against him." Hairston v. Commonwealth, 2 Va. App. 211, 213, 343 S.E.2d 355, 357 (1986). "A variance occurs when the criminal pleadings differ from the proof at trial." Purvy v. Commonwealth, 59 Va. App. 260, 266, 717 S.E.2d 847, 850 (2011). "[A] variance will be deemed fatal 'only when the proof is different from and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged.'" Id. at 267, 717 S.E.2d at 850 (quoting Stokes v. Commonwealth, 49

Va. App. 401, 406, 641 S.E.2d 780, 783 (2007)).  "In short, the 'offense *as charged* must be proved.'"  Id. (quoting Mitchell v. Commonwealth, 141 Va. 541, 560, 127 S.E. 368, 374 (1925)).

In support of his argument that currency described in the indictment was the property of the bank, and not Shaw, appellant cites the Virginia Supreme Court's decision in Gardner v. Commonwealth, 262 Va. 18, 546 S.E.2d 686 (2001).  In Gardner, defendant, the granddaughter of George Gardner, went to a bank branch and "presented to a teller a withdrawal slip for $725.00 ostensibly signed by George Gardner and stating that 'Latasha is allowed to receive and sign this [withdrawal slip].'  The teller paid the defendant $725.00 in cash."  Id. at 20, 546 S.E.2d at 687 (alteration in original).  Gardner had neither signed the withdrawal slip nor given defendant permission to sign his name.  Id.  Before the bank charged the grandfather's account with the amount of the withdrawal, it learned that defendant was not authorized to make the withdrawal.  Id.  The grandfather's account "was not debited with this seven hundred and twenty-five dollars," and the bank was "out the money."  Id.  Defendant was indicted "for obtaining by false pretenses United States currency of a value greater than $200.00, '*the property of George Gardner*,' with the intent to defraud him."  Id. at 19, 546 S.E.2d at 686 (emphasis added).

Defendant argued on appeal that a fatal variance existed between the indictment and the evidence because the Commonwealth pled an offense of larceny by false pretenses from defendant's grandfather but proved a different offense of larceny by false pretenses from the bank.  Id. at 20, 546 S.E.2d at 687.  The Supreme Court agreed with defendant, acknowledging that "[t]he relationship between a financial institution and its depositor is that of debtor and creditor.  The funds become the property of the bank immediately on deposit, and the bank becomes the debtor of the depositor."  Id. (quoting Bennet v. First & Merchs. Nat'l Bank, 233 Va. 355, 360, 355 S.E.2d 888, 890-91 (1987)).  The Court held that the money withdrawn

- 5 -

without authorization was the property of the bank, not Gardner. Id. at 25, 546 S.E.2d at 690. Thus, the bank was the victim. Id. This failure to identify the correct victim, the Court concluded, constituted a fatal variance. Id.

Appellant argues Gardner controls in this case, as the evidence adduced at trial proved that the currency allegedly obtained by false pretense was the property of Old Point National Bank, and not Shaw. Appellant contends that the Commonwealth's evidence in this case showed that appellant allegedly obtained currency from Shaw's bank account through the check drawn on Cheryl Tucker's account. However, because that check was fraudulent and subject to a stop payment order, Old Point National Bank did not have the authority to advance the funds to Shaw and thus the currency that appellant allegedly obtained was never Shaw's property.

We disagree with appellant's theory of possession. The money obtained by false pretense was Shaw's $1,500 authorized withdrawal from her own account at Old Point National Bank, which she subsequently gave to appellant. When Shaw obtained $100 from the ATM and cashed the counter check for $1,400, she had possession of the $1,500; it no longer belonged to the bank. See id. at 22, 546 S.E.2d at 688 (explaining that the funds were the property of the bank "until the instant the defendant obtained ownership through her use of the forged withdrawal slip"). The money was in Shaw's possession once she obtained it from the ATM and cashed the counter check; thus, appellant obtained possession of the money from Shaw, not the bank, when she gave it to him. The indictment, therefore, correctly specified that the funds belonged to Shaw. Accordingly, there was no variance between the language of the indictment and the evidence introduced at trial.

In the instant case, unlike Gardner, the relationship between a depositor and their bank is not at issue, as Shaw obtained money from her own account and then gave it to appellant. This was the currency obtained by false pretense. Here, the depositor/bank relationship at issue in

Gardner exists only between Cheryl Tucker and Bank of America. However, the transfer of money between them did not provide the basis for the charge of obtaining money by false pretenses. Rather, the currency obtained by false pretense was the money in Shaw's possession that she subsequently gave to appellant. While Shaw later believed she was only able to withdraw these funds as a result of an unauthorized transaction, the actual funds obtained were from Shaw's bank account that she was ultimately responsible for repaying. As such, Shaw was properly named as the victim in the indictment, and therefore the trial court did not err in denying the motion to strike on this ground.

Sufficiency of the Evidence

Appellant also argues that the trial court erred in denying his motion to strike the evidence on the ground that the Commonwealth's evidence was insufficient because of the Commonwealth's reliance on the testimony of an incredible witness.

When considering the sufficiency of the evidence on appeal of a criminal conviction, "we review the evidence in the 'light most favorable' to the Commonwealth." Pryor v. Commonwealth, 48 Va. App. 1, 4, 628 S.E.2d 47, 48 (2006) (quoting Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis omitted)). "The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." Clark v. Commonwealth, 30 Va. App. 406, 410, 517 S.E.2d 260, 261 (1999) (quoting Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988)).

- 7 -

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993). The "conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" Johnson v. Commonwealth, 58 Va. App. 303, 315, 709 S.E.2d 175, 181 (2011) (alteration in original) (quoting Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006) (quoting Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968)).

Appellant contends that Shaw was an inherently incredible witness because she requested a counter check drawn on her account, instead of simply withdrawing the remaining $1,400. Further, Shaw agreed to pay back the funds to her bank. These actions, according to appellant, were only reasonable if Shaw knew she was passing a bad check.

Here, Shaw testified before the jury as to the circumstances surrounding her cashing of a check from the account of Cheryl Tucker and subsequent withdrawal of funds from her own account. While appellant claims that Shaw's testimony was inherently incredible because her story was a fabrication to conceal guilt, the jury as fact finder credited her testimony. On appeal, we cannot say that it was unreasonable for the jury to believe Shaw's account. It is important to note that "[t]he living record contains many guideposts to the truth which are not in the printed record," and an appellate court, not having the benefit of these guideposts, "should give great weight to the conclusions of those who have seen and heard them." Bradley v. Commonwealth,

196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955). Giving such weight to the jury's credibility determination, we hold that Shaw's testimony was not inherently incredible or so contrary to human experience as to render it unworthy of belief. Consequently, the trial court did not err in denying appellant's motion to strike on this ground.

### III. CONCLUSION

We hold that the trial court did not err in finding no fatal variance between the indictment and the evidence adduced at trial. Further, as Shaw's testimony was not inherently incredible, the evidence was sufficient to convict appellant of obtaining money by false pretenses. Accordingly, we affirm appellant's conviction.

<u>Affirmed.</u>